STORM and others vs. COTZHAUSEN and others.

| 38 | 139 |
|----|-----|
| 74 | 397 |
| 38 | 139 |
| 88 | 86 |
| 38 | 139 |
| 94 | 614 |

GARNISHMENT: ATTACHMENT: DRAFT. (1) *Statutes relating to garnish-ment in aid of execution, and in attachment,* in pari materia; *their con-struction.* (2) *Draft payable to debtor may be attached; may be collected by officer.* (3, 4) *Unaccepted sight draft purchased with debtor's funds, subject to garnishment in aid of execution.*

1. The statute relating to garnishment in aid of an *execution* (ch. 249 of 1862; Tay. Stats., 1568–1572, §§ 114–130), and that relating to garnish-ment in *attachment* suits (Tay. Stats., 1467–1487), are *in pari materia,* and the latter may be considered in aid of the construction of the former; and in both the process is intended to reach the " property, credits and effects " of the principal debtor in the garnishee's hands, and apply them to the payment of the debt.
2. Under the *latter* statute a draft payable to the debtor may be seized on attachment, and the officer (if he cannot sell it on the execution or under an order of the court) has ample authority to *collect* it. Tay. Stats., 1471–81, §§ 12, 37, 38, 44, 57.
3. The provision of the *former* statute, that the officer, on delivery to him of property in the garnishee's hands belonging to the judgment debt-or, " shall proceed therewith *according to law*" (Tay. Stats., 1570, § 120), must be construed with reference to the power given the officer by the *latter* statute, as well as that given by the common law, for disposing of such property.
4. Defendants, when garnished in aid of an execution, had in their hands an unaccepted sight draft, drawn by a bank of this state on a bank in another state, payable to the order of the judgment debtor, which de-fendants had purchased with money which they had collected for him. *Held,* that the draft was subject to garnishment, and that de-fendants, who sent it to the debtor after service of garnishee process, are liable to the judgment creditor for the amount thereof.

APPEAL from the Circuit Court for *Milwaukee* County.

Plaintiffs having recovered judgment against one Bloom in the circuit court for Green county, docketed the judgment in Milwaukee county, and placed an execution in the hands of the sheriff of the latter county, process of garnishment was served on defendants. The garnishees, as attorneys for Bloom, had collected money for him the day before service of the garnishee

process, and had on the same day placed the money in bank and procured a sight draft therewith on a New York bank, payable to the order of Bloom, for the amount due him. The draft still remained in their hands at the time of service. The court held that the draft was not subject to garnishment on execution, and gave judgment for the garnishees; from which the plaintiffs appealed.

*Jenkins, Elliott & Winkler*, for appellants, argued that the word " property," as used in the statute governing attachments, includes " money, goods, chattels, things in action and evidences of debt." A writ of attachment is executed by seizing " so much of the property of defendant as will be sufficient," etc. R. S., ch. 130, sec. 9. The word " property," as here used, certainly includes commercial paper, and sec. 10 provides that the sheriff may collect it. Long prior to the act of 1862, secs. 34 and 35, ch. 140, R. S., authorized garnishment and fixed the liability of garnishees, which extended, without question, to such a case as this. But the garnishment could only be had when a writ of attachment had been issued. Then, by chapter 249, Laws of 1862, the legislature gave the same right of garnishment in aid of an execution, and gave it in the same language in which it had been previously enacted with reference to writs of attachment. That it was the intention of the legislature to make the garnishee proceeding as broad and effectual under an execution as under an attachment, and that it is in both cases intended to include all choses in action and evidences of debt which are capable of actual seizure and manual delivery, can not be doubted. But it is said that under an execution the sheriff can do nothing but sell, and that by the common law he can not sell a chose in action, and that that right had not been previously given by statute. If this were so, it is a sufficient answer to say that the right to sell would be impliedly given by this very act; for it is said that the sheriff " shall proceed therewith according to law." But it is not true that the sheriff can do nothing but sell under an execu-

tion.   If he had received this draft, he could have collected it.
It was an evidence of debt due defendant, which the debtor is
authorized to pay to the sheriff holding the execution.   R. S.,
ch. 134, sec. 90.   Commercial paper, and all such choses in
action as are in themselves complete evidences of debt, are sub-
ject to levy and sale on execution.    There is a clear distinction
between this class of securities on the one hand, and accounts or
books of account on the other.    The latter are mere memoran-
da of contracts lying in parol.    They are not evidences of debt,
and can only be used in evidence in connection with parol testi-
mony.    It is very clear that such property can not be levied
on under an execution, or seized on a writ of attachment.
*Brower v. Smith,* 17 Wis., 410.

*Cotzhausen, Sylvester & Scheiber,* respondents in person, con-
tended that a chose in action is not subject to garnishment on
execution.    Our garnishee proceeding is purely statutory, and
substantially copied from the trustee process in Massachusetts.
The amount of the indebtedness is to be paid by the garnishee
to the sheriff, and if he has property of the debtor in his hands,
it is to be delivered to the officer having the execution, who
shall proceed therewith according to law.    Laws of 1862, ch.
249, sec. 7.   He is to proceed as he would be required by law
to do if he had seized the same property on his execution.   But
he cannot seize and sell on execution an instrument like that
here in question.    At common law a chose in action could
not be seized and sold upon execution (Crocker on Sheriffs,
452; *Denton v. Livingstone,* 9 Johns., 96); and our legislature,
in express words, makes but three classes of choses in action
subject to sale on execution, viz: bank bills circulated as
money, government securities, and stocks of home companies.
*Expressio unius est exclusio alterius.*   See 4 Wait's Pr., 36; *Har-
ris v. Murray,* 28 N. Y., 574.   Nor can the officer institute
suit to collect a chose in action.    The rule that the per-
sonal property in the garnishee's hands, in respect of which he
may be charged, must be such as is capable of being seized

and sold on execution, results from the consideration that he should be at liberty to discharge himself from pecuniary liability by delivering the property into court, and should not be charged for that which, if so delivered, could not be sold under execution. Drake on Attachments, § 479. And see *Keyes v. Railway Co.*, 25 Wis., 691; *Grosvenor v. Bank*, 13 Conn., 104.

COLE, J. At the time of the service of the garnishee process, the garnishees had in their possession a sight draft payable to the order of the judgment debtor. The draft was drawn by a bank of Milwaukee upon a bank in New York, and was the property of the judgment debtor—the garnishees having purchased it with money which they had collected for him. The draft had not yet been presented to the drawee for payment. The sole question in the case is, whether this draft was subject to the garnishee process on execution. The question is not free from difficulty, under the various provisions of our statutes; but, after due deliberation, we have reached the conclusion that it was.

The statute (ch. 249, Laws of 1862) authorizing this proceeding in substance provides, that after an execution has been issued, if the judgment creditor or some one in his behalf shall make an affidavit, stating that he verily believes that any person or corporation (naming him or it) "*has property credits or effects* in his or its hands or possession, belonging to the judgment debtor, or that he or it is indebted to such judgment debtor," and delivers the affidavits to the officer having the execution, the officer is then required to serve a copy of the affidavit on the person or corporation named, together with a written notice to appear and answer before a judge or court commissioner of the county touching his or its liability. Sec. 1. It is further provided that from the day of such service the person or corporation so notified as garnishee shall stand liable to the judgment creditor "to the amount of the property, moneys and credits in his or its hands and possession, and

debts due or to become due from the garnishee to such judgment debtor." If it appears from the answer that the garnishee was indebted to the judgment debtor, or that the garnishee had property in his or its hands or possession belonging to such judgment debtor, at the time the notice to appear and answer was served, the garnishee is required to forthwith deliver such property, or pay the amount of his or its indebtedness, to the sheriff or other officer having the execution, "*who shall proceed therewith according to law.*" Sec. 7. A payment to the officer by the garnishee, of a debt due from him to the judgment debtor, or a delivery of property in his hands, exonerates the garnishee from all liability therefor to the judgment debtor.

From these provisions of the law of 1862, it will at once be seen that the proceeding of garnishment upon an execution is authorized in a similar manner, and apparently with like scope and effect, as upon writs of attachment under ch. 130, R. S. In both cases the process of garnishment is given in nearly the same language, and seems to be dictated by the same spirit and policy. The remedy was intended to be effectual in both cases, so as to reach "the property, credits and effects" in the hands of the garnishee belonging to the judgment debtor, and apply them to the payment of his debt. To some extent the two statutes giving this remedy doubtless refer to and derive aid from each other. They are strictly *in pari materia*. Under the attachment law the remedy by garnishment is minutely and fully regulated; and were this proceeding under that chapter, there would be no doubt that the draft would be subject to the process. The garnishees would be required to deliver the draft to the sheriff, who might proceed and collect it, and apply the proceeds to the payment of the judgment. See secs. 12, 37, 38, 44, 57, ch. 130, Tay. Stats. The counsel for the garnishees claim that even under the attachment law it cannot be presumed the legislature intended to abrogate the common law rule, and subject a chose in action to levy and

sale. on execution. However this may be, it is very certain that the officer might seize the draft on the attachment, and, if he could not sell it on execution, or under an order of court, he had ample authority to proceed and collect it. This is very obvious from the provisions above referred to. Upon this point we were referred to some decisions which hold that a bond, note, or other chose in action, is not liable to attachment; but we cannot adopt them as correct expositions of the law, on account of the dissimilarity between the statutes under which these decisions were made, and our own, upon this subject. Our statute renders liable to attachment and to garnishment on execution, " the property, credits and effects " of the debtor in the hands or possession of a third person; and this language is sufficiently broad and comprehensive to include a draft or other chose in action. (See definition of the term " personal property," as given in subd. 14, sec. 1, ch. 5, R. S.) Nor do we think there is anything in this view inconsistent with the ruling in *Brower, Sheriff, v. Smith;* 17 Wis., 410. In that case it was held " that books of account are not such evidence of debt, that the mere obtaining possession of them by an attaching officer constitutes any attachment of the debts mentioned in them. Those evidences of debt which may be attached by mere seizure, are only those which are complete and perfect evidences in themselves." A draft is within the rule here stated — being a complete and perfect evidence of debt in itself, and a written request or order by the drawer upon the drawee to pay it on sight.

The learned circuit court, in the opinion filed in the cause, seemed to hold that the draft would be subject to garnishee process upon a writ of attachment, because that statute, in clear terms, gave the sheriff power to collect it. But the court thought, under the law authorizing garnishee proceedings on execution, the sheriff could not sell the draft when delivered to him, and had no power to make it available. If this view be correct, it affords a strong reason for holding the instrument

not subject to garnishment. But we think this view is un-
sound.

We have already said that these statutes are *in pari materia*,
and were doubtless intended to be harmonious and consistent
in their operation. They aim at the same result, and were de-
signed to be equally efficient. They come within the estab-
lished rule of law, that all acts *in pari materia* are to be taken
together, as if they were one law ; and they must be compared
together in the construction, because they are framed on one
system, having one object in view. To some extent the gar-
nishee process on execution derives aid from the provisions of
the attachment law. The garnishee is required to deliver the
property in his possession belonging to the judgment debtor, to
the officer having the execution, " *who shall proceed therewith
according to law.*" This doubtless refers to the provision of
the attachment law, which directs what the officer shall do with
that species or kind of property where he obtains it upon a
a writ of attachment. He is to proceed with it according to
law ; that is, he is to receive and collect it, and apply the pro-
ceeds of the draft in satisfaction of the *fi. fa.* This is in har-
mony with the rule laid down by Dwarris, who states the same
as follows : " When an action founded upon statute is given
by a subsequent statute in a new case, everything annexed to
the action by the first statute is likewise given. Indeed the
latter act may be considered as incorporated with the former."
Dwarris on Statutes, marg. p. 700. These provisions in the
different statutes in regard to garnishee proceedings, whether
upon attachment or upon execution, seem to us to come with-
in the application of this rule. And when the sheriff was di-
rected by the law of 1862 to receive the property from the
garnishee, and proceed therewith according to law, it must be
presumed the legislature referred to some rule of the common
law, or some provision of statute law, which authorized the
officer to manage and dispose of that species of property. Un-
der the attachment law he was surely authorized to proceed

and collect any note or other chose in action which might be delivered to him. And we think he was entitled to receive the draft from the garnishees; to collect it, and apply the proceeds, or a sufficient amount thereof, to the satisfaction of the execution held by him.

It follows from these views that the judgment of the circuit court must be reversed, and the cause must be remanded with directions to render judgment against the garnishees in conformity with this decision.

*By the Court.* — It is so ordered.